IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ARVIND M. PATEL,

                Plaintiff,　　　　　　OPINION AND ORDER

   v.　　　　　　　　　　　　　　　　　11-cv-6-wmc

UNITED STATES DEPARTMENT
OF STATE, *et al.*,

                Defendants.

---

Plaintiff Arvind M. Patel filed this lawsuit against the United States Department of State (the "State Department"), Diplomatic Security Special Agent Josiah Keats ("Agent Keats") and another, unidentified special agent, alleging, among other things, that he was denied a U.S. passport in violation of his constitutional rights. On July 20, 2012, the court granted the defendants' motion to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted, but allowed him an opportunity to amend. Plaintiff subsequently filed an amended version of his complaint. The State Department and Agent Keats have once again filed separate motions to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has filed more than one response, including a motion to strike or "dismiss" the Rule 12(b)(6) motion filed by Agent Keats.

In reviewing any *pro se* litigant's pleadings, the court must construe the claims generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). Having considered all of the

pleadings under this lenient standard, the court concludes that Patel has again failed to articulate a viable claim. Accordingly, the case will be dismissed.

## FACTS

The following facts are drawn from Patel's first amended complaint.[1] The court also considers a letter to Patel from the State Department, dated May 13, 2011, which denied the passport application that forms the basis of Patel's lawsuit.[2] (See Dkt. # 48, Letter dated May 13, 2011, Ex. A).

Patel, who currently resides in Mauston, Wisconsin, was born in India in 1941. In 1976, Patel became a United States citizen through naturalization under the name "Arvindkumar Manilal Patel." In 1980, Patel obtained a court order in Cook County,

---

[1] In response to the order entered on July 20, 2012, dismissing the original complaint for failure to state a claim, Patel filed a 14-page "First Amended Complaint" (Dkt. # 39), followed by a two-page "Second Amended Complaint" (Dkt. # 52), which includes a photocopy of two passports issued to him previously in 1993 and 1998. Because Patel's second amended complaint does little more than add information about his previous passports, this opinion and order will focus on the sufficiency of his first amended complaint.

[2] Previously, the court declined to consider the letter dated May 13, 2011 because it was not attached to the original complaint. However, Patel references the letter repeatedly in his amended pleadings and its substance is critical to his primary claim that his passport was denied improperly. Under these circumstances, the court may consider this exhibit when ruling on the defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See FED. R. CIV. P. 10(c); see also Geinosky v. City of Chicago, 675 F.3d 743, 745 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice."); Witzke v. Femal, 376 F.3d 744, 749 (7th Cir. 2004) (explaining that documents attached to the complaint become part of the pleading, meaning that a court may consider those documents to determine whether Patel has stated a valid claim).

2

Illinois, which legally changed his name to "Sailash Shah." The State Department granted Patel a United States passport under his new legal name in 1980, 1993, and 1998. The State Department also appears to have granted Patel a passport under his former name (Arvindkumar Manilal Patel) in 1985, 1993, and 1995.

In June 2009, Patel again applied for a new passport under his former name. When asked in that application whether he had ever applied previously for a United States passport, Patel indicated falsely that he had not. (Dkt. # 48, Ex. A). On October 13, 2010, Special Agent Josiah Keats and another, unidentified special agent from the State Department paid a surprise visit to Patel's home with a local police officer (Officer John Nault), who knocked on the door and announced "Mauston Police." Patel "slightly turned [the] door knob," advising that he was "in the shower." After inviting the local policeman to enter, Patel returned to finish his shower. At that time, he "did not know" that the local police officer was accompanied by two federal agents.

After Patel completed his ablutions, he returned to the living room and "found himself surrounded by three [uniformed officers.]" Agent Keats and the other special agent questioned Patel about his 2009 passport application and their suspicion that he was engaged in fraud.[3] At some point, Agent Keats stepped outside to make a call on his cell phone. When he did so, the other special agent reportedly told Patel that he could

---

[3] It is a federal offense for a person to "willfully and knowingly [make] any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws[.]" 18 U.S.C. § 1542.

3

be arrested for passport fraud. Interpreting this statement as a threat, Patel became frightened. Patel did not tell the agents to leave his residence, however, because he was "trying to figure out why this hell got loose on him" when he had not committed a crime. While Patel was not arrested or charged with an offense, his 2009 passport application was ultimately denied. (Dkt. # 48, Ex. A).

Patel alleges that he was traumatized by the accusation of fraud made during the special agents' impromptu interview on October 13, 2010. Patel asserts that the special agents' visit to his home was an intrusion upon his right to privacy and that the accusation of fraud was unwarranted because he identified himself under both names during a personal interview with passport officials in 1993. He alleges further that the State Department committed a "serious due process" violation by denying his 2009 passport application without following certain rules found in the Foreign Affairs Manual. Finally, Patel alleges that he was denied a passport for racially discriminatory reasons.

Invoking 42 U.S.C. § 1983, Patel seeks $1 million in damages from the State Department for violating his right to due process and equal protection. Arguing further that his passport was denied as the result of racial discrimination, Patel seeks declaratory and injunctive relief from the State Department under the Administrative Procedures Act ("APA") in the form of a "fee-free passport under either name." Patel also seeks $15,000 from each special agent for violating his rights under the Fourth Amendment during their surprise visit to his home.

4

OPINION

I. Motions Under Rule 12(b)(6)

The defendants urge that the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The federal pleading rules do not require "heightened fact pleading of specifics," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* FED. R. CIV. P. 8(a) (requiring only "a short and plain statement of the claim" showing that the pleader is entitled to relief). Still, to withstand a motion to dismiss, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). A complaint must be dismissed pursuant to Rule 12(b)(6) if the plaintiff fails to plead enough facts to state a claim for relief that is "plausible on its face." *Iqbal*, 556 U.S. at 677 (citation omitted). A claim has facial plausibility for purposes of Rule 12(b)(6), "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556); *McCauley v. City of Chicago*, 651 F.3d 611, 615 (7th Cir. 2011) (following the plausibility standard articulated in *Iqbal* and *Twombly*).

When ruling on a motion to dismiss under Rule 12(b)(6), a reviewing court must accept as true all of the factual allegations contained in the complaint. *See Twombly*, 550 U.S. at 555 (citations omitted). Complaints filed by pro se litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent

5

standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than the unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 552 U.S. at 678 (citations omitted). Likewise, courts are not bound to accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or legal conclusions couched as factual assertions. *Id.*

## II. Claims Against the State Department

Patel alleges that the State Department violated his Fifth Amendment right to procedural due process and equal protection when it denied his passport. Specifically, he alleges that the State Department violated his right to due process by dispatching agents to his home instead of sending an "Information Request Letter" to verify his identity in compliance with its own internal procedures. He alleges further that this conduct violated his right to equal protection because, as a "minority-elderly Asian-American USA citizen," he was treated differently from other passport applicants.

### A. Monetary Damages

To state a claim under 42 U.S.C. § 1983, a plaintiff must sufficiently allege that a "person" acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States.[4] *London v. RBS Citizens, N.A.*,

---

[4] Section 1 of the Civil Rights Act of 1871, codified as 42 U.S.C. § 1983, authorizes a civil action against "[e]very person who, under color of any statute, ordinance, regulation, custom,

6

600 F.3d 742, 745-46 (7th Cir. 2010) (citing *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). As a federal agency, the State Department is neither a person nor a state actor for purposes of liability under § 1983. *See District of Columbia v. Carter*, 409 U.S. 418, 423-24 (1973); *see also Hindes v. Federal Deposit Ins. Corp.*, 137 F.3d 148, 159 (3d Cir. 1998) (holding that a federal agency is not a "person" within the meaning of § 1983) (citations omitted); *United States v. Vital Health Prods., Ltd.*, 786 F. Supp. 761, 778 (E.D. Wis. 1992) (same).

Although *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), authorizes a remedy comparable to § 1983 for civil rights violations committed by federal actors, such a claim is available against individual agents only. *See Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 483-86 (1994). For this reason, neither the United States nor agencies like the State Department are proper parties under *Bivens*. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001). Patel does not articulate any other viable claim for monetary damages against the State Department.[5] Because this presents an

---

or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" As such, § 1983 does not create a substantive right to relief, but operates instead as "a means for vindicating federal rights conferred elsewhere." *Padula v. Leimbach*, 656 F.3d 595, 600 (7th Cir. 2011) (citation omitted).

[5] As the defendants correctly note, this court has already found that neither the State Department nor the individual federal agents are proper defendants for purposes of the Federal Tort Claims Act, 28 U.S.C. § 2679, which authorizes a limited waiver of sovereign immunity for suits against the United States. (Dkt. # 38, *Opinion and Order*, at pp. 5-6). Because Patel only asserts violations of the federal constitution and agency guidelines found in the Foreign Affairs Manual, he fails to state a viable claim for monetary damages under the

7

incurable defect, Patel's claim for monetary damages against the State Department will be dismissed pursuant to Fed. R. Civ. 12(b)(6).

### B. Declaratory and Injunctive Relief

Arguing that the State Department failed to follow internal procedures for requesting additional information from passport applicants, Patel maintains that he was denied due process and that he is entitled to declaratory and injunctive relief under the APA. Assuming that there was a failure to comply with the Foreign Affairs Manual,[6] the State Department maintains that it is neither actionable under the APA nor implicates a constitutional violation.

The APA authorizes suit by a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. However, judicial review is available only when a federal administrative agency fails to follow rules and regulations that have "the force and effect of law." *Western Radio Servs. Co. v. Espy*, 79 F.3d 896, 900 (9th Cir. 1996) ("[W]e will review an agency's alleged noncompliance with an agency pronouncement only if

---

FTCA for reasons set forth previously.

[6] Conceding the point for purposes of this motion, the State Department explains that while passport agencies are advised to send an Information Request Letter seeking additional evidence to support issuance of a passport in the name listed on the application, this guideline does not apply to cases in which the agency suspects that the applicant is engaging in fraud. (Dkt. #48, at p. 7). Because fraud was suspected in Patel's case, the State Department argues that it did not process Patel's passport application in a manner inconsistent with the Foreign Affairs Manual. The State Department also insists that there was no failure to comply with internal procedures in so far as Patel's application is concerned.

8

that pronouncement actually has the force and effect of law.") (citation omitted).

As Patel concedes, the Foreign Affairs Manual is an internal guideline that sets forth agency practice and procedures. Because internal guidelines and agency manuals like the Foreign Affairs Manual are not subject to APA rulemaking procedures, they lack the force of law and do not bind agency discretion.[7] *See Vietnam Veterans of America v. Secretary of the Navy*, 843 F.2d 528, 537 (D.C. Cir. 1988); *see also Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (observing that interpretations contained in policy statements, agency manuals, and enforcement guidelines "lack the force of law"). Accordingly, an agency's failure to comply with an internal guideline or manual is not reviewable under the APA. *See Western Radio Servs.*, 79 F.3d at 900; *see also Scales v. Immigration and Naturalization Serv.*, 232 F.3d 1159, 1166 (9th Cir. 2000) (noting that the Foreign Affairs Manual lacks the force of law because it does not constitute an agency interpretation "arrived at after, for example, a formal adjudication or notice-and-comment rulemaking" procedures found in the APA). As a result, Patel's claim under the APA will also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[7] In contrast to substantive or legislative rules, which are promulgated by an agency to implement a statute, internal guidelines and agency manuals are not subject to the rigorous rule-making procedures found in the APA. *See Reno v. Koray*, 515 U.S. 50, 61 (1995); *see also Batterton v. Marshall*, 648 F.2d 694, 702 (D.C. Cir. 1980) (comparing the enforceability of substantive rules with agency interpretation, policy statements, or internal practice and procedures, which are non-binding); *Exelon Generation Co. v. Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO*, 676 F.3d 566, 677 (7th Cir. 2012) (observing that an agency promulgating substantive or legislative rules must comply with notice-and-comment rulemaking procedures found in the APA at 5 U.S.C. § 553).

C. Patel Fails to State a Due Process Violation

For similar reasons, Patel cannot establish that the State Department violated his right to due process by failing to comply with the Foreign Affairs Manual. As noted in the court's previous opinion, there is a liberty interest in having the freedom to travel outside the United States.[8] *See Haig v. Agee*, 453 U.S. 280, 306-07 (1981) (observing that the right to interstate travel within the United States is "virtually unqualified," whereas the ability to travel internationally can be regulated within the bounds of due process) (citing and quoting from *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978). To the extent that any portion of the Foreign Affairs Manual was not followed during the processing of Patel's application, however, an agency manual setting out internal procedures does not implicate a liberty interest unless those procedures have the force and effect of law. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987); *see also United States v. Caceres*, 440 U.S. 741, 751-52 (1979) (finding that violations of agency regulations did not raise any constitutional questions). As noted above, the Foreign Affairs Manual is an internal guideline that lacks the force of law. Thus, the failure to follow an internal agency manual like the Foreign Affairs Manual does not, in and of itself, result in a violation of due process. *See Culbert*, 834 F.2d at 628; *see also Agee v. Baker*, 753 F. Supp. 373, 383 (D.D.C. 1990) (finding that a decision to hold a paper hearing rather than a live hearing in a passport proceeding did not offend the APA or the

---

[8] Patel's claim does not implicate a property interest because United States passports are not considered property of the individuals to whom they are issued. *See* 22 C.F.R. § 51.7(a) ("A [United States] passport at all times remains the property of the United States and shall be returned to the U.S. Government upon demand.").

10

Due Process Clause).

Even assuming that Patel has implicated a liberty interest for purposes of the due process clause, he still fails to show that his passport application was denied without the requisite level of due process. To state a constitutional violation in this context, a plaintiff must allege facts showing that he was deprived of a liberty without constitutionally sufficient procedures. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Hannemann v. Southern Door County Sch. Dist.*, 673 F.3d 746, 752 (7th Cir. 2012). The amount of due process owed is "flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334. At a minimum, due process requires that the government provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, Patel does not allege facts showing that his passport application was denied without notice or an opportunity to be heard; nor does he otherwise allege that the State Department's insistence on proof of his identity was improper or fundamentally unfair. In that respect, everyone who applies for a passport is required to present proof of identity and citizenship. *See* 22 C.F.R. §§ 51.23, 51.40-.41. Patel concedes that his passport application was denied because he failed to provide adequate proof of his identity in support of his passport application. Indeed, as pled, he could not have since he was seeking it in his old name while already having switched to a new name.

11

Accordingly, even if his passport application was processed in a manner that did not fully comply with internal agency procedures found in the Foreign Affairs Manual, Patel fails to articulate a constitutional violation of the Due Process Clause.

D. Patel Fails to State an Equal Protection Violation

Pointing to his status as an elderly Asian-American citizen, Patel final alleges that he was denied equal protection because he was treated differently from other passport applicants based on his race, among other things. The equal protection clause requires the government to treat similarly situated persons alike. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To state a claim, a plaintiff must plead sufficient facts to show that the defendant "adopted and implemented a policy not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion, or national origin." *Iqbal*, 556 U.S. at 676-77. In other words, a plaintiff must allege an improper motive, and not merely a discriminatory impact. *See Washington v. Davis*, 426 U.S. 229, 245 (1976).

Here, Patel does not allege facts showing that he was denied a passport as the result of an improper motive or intentional discrimination.[9] Rather, Patel concedes that

---

[9] For example, Patel alleges that he is entitled to relief for violations of his right to equal protection under the terms of a settlement agreement reached with the State Department in *Castelano, et al. v. Clinton, et al.*, Case No. 7:08-cv-0058 (S.D. Tex. Aug. 14, 2009). The plaintiffs in that class action case claimed citizenship through a parent whose birth along the southwest Texas border was attended by a midwife or other birth attendant, rather than at a hospital, resulting in a lack of documentation. These plaintiffs asserted that their passport applications were categorically subject to a heightened level of scrutiny that violated due

12

his application was denied because he failed to present sufficient proof of his identity. Because every passport applicant is required to establish his identity, *see* 22 C.F.R. §§ 51.23, 51.40-.41, Patel does not demonstrate that he was subject to disparate treatment or that he was treated differently from any other similarly situated individual. Patel fails to state a violation of the Equal Protection Clause and, absent a claim for relief that can be granted with respect to the State Department, the complaint against this defendant must be dismissed.

### III. Claims Against Agent Keats

Patel separately contends that Agent Keats is liable pursuant to *Bivens* for violating his Fourth Amendment rights during the interview conducted at Patel's home on October 13, 2010. Agent Keats argues that Patel fails to state a plausible claim under the federal pleading rules set forth in Fed. R. Civ. P. 8 because his amended pleadings contain only vague allegations that are insufficient to implicate the Fourth Amendment. Alternatively, Keats argues that Patel fails to state a claim for relief because his allegations do not demonstrate that an unreasonable search or seizure occurred.

The Fourth Amendment protects "[t]he right of the people to be secure in their

---

process and equal protection. As a result of the settlement, class members were allowed to file "fee-free applications" for a passport during November 2009 at various locations in Texas. The beneficiaries of the *Castelano* settlement are limited to individuals whose births were registered by a midwife or birth attendant in Texas and who unsuccessfully applied for a U.S. passport in the United States between April 8, 2003 and August 14, 2009. Because Patel fails to meet these criteria, his attempt to insert himself into the *Castelano* class is without merit.

13

persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend IV. As such, the Fourth Amendment only regulates government activity that constitutes either an unreasonable "search" or "seizure." *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 459 (7th Cir. 2007). Patel does not allege that he was restrained or seized in any way that is recognized by the Fourth Amendment *Id.* at 460, n.1 (defining a seizure as requiring purposeful state action to restrict individual liberty "through means intentionally applied") (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989)). Accordingly, Patel states a claim only if he alleges facts showing that the defendants' conduct constituted an unreasonable search within the meaning of the Fourth Amendment.

The Supreme Court has emphasized that "the Fourth Amendment cannot be translated into a general constitutional 'right to privacy.'" *Katz v. United States*, 389 U.S. 347, 350 (1967). Rather, to claim Fourth Amendment protection a person must have a legitimate expectation of privacy in the invaded place. *Id.* at 351-52. An unreasonable search occurs only when "an expectation of privacy that society is prepared to consider reasonable is infringed" upon by the state. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (citations omitted); *Christenson*, 483 F.3d at 460. A person's home easily qualifies as a place in which one has a legitimate expectation of privacy protected by the Fourth Amendment. *Griffin v. Wisconsin*, 483 U.S. 868, 883 (citing *Silverman v. United States*, 365 U.S. 505, 511 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable

14

governmental intrusion"). Thus, a warrantless search or seizure conducted in a person's home violates the Fourth Amendment absent consent or exigent circumstances. *Griffin*, 483 U.S. at 883-84 (citations omitted).

Here, Patel affirmatively alleges that he applied for and received a passport under two names (Patel and Shaw), before he sought a new passport in 2009. (Dkt. # 52, *Second Amended Complaint*, Exh. A). He also concedes that the agents paid him a visit on October 13, 2010, to determine his identity and to investigate their suspicion of passport fraud. More importantly, it appears from the facts alleged that Patel allowed the agents to enter his home and that he "did not" ask the agents to leave because he wanted to "figure out" the source of the problem. (Dkt # 39, *First Amended Complaint*, at ¶ 5).

The court agrees that Patel's allegations against Agent Keats and the unidentified special agent who accompanied him on October 13, 2010, consist mainly of unsupported assertions that his Fourth Amendment rights were unreasonably trod upon. A pleading that offers no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint such as this one, which features only "naked assertion[s]" devoid of "further factual enhancement," fails to meet the bare minimum of the federal pleading requirements. *Id.* (referencing Fed. R. Civ. P. 8(a)) (citation omitted).

Construed with generosity, Patel describes the type of voluntary encounter that does not implicate the Fourth Amendment. In that respect, "police officers do not engage in a search when they approach the front door of a residence and seek to engage

15

in what is termed a 'knock and talk,' *i.e.*, knocking on the door and seeking to speak to the occupant for the purpose of gathering evidence." *Florida v. Jardines*, — U.S. —, 133 S. Ct. 1409, 1423 (2013) (citing *Kentucky v. King*, — U.S. —, 131 S. Ct. 1849, 1862 (2011)); *see also United States v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005) (describing the "knock and talk" as a well-recognized and "legitimate investigative technique at the home of a suspect or an individual with information about an investigation") (collecting cases).

This court's order dismissing the original complaint on July 20, 2012, gave Patel specific guidance on what he would need to state a Fourth Amendment violation. (Dkt. # 38, *Opinion and Order*, at 10). He comes nowhere close to establishing that such a violation occurred.[10] To the extent that Patel's allegations against Special Agent Keats and the other, unidentified defendant do not articulate a plausible claim, the court will now grant the motion to dismiss those claims.

### ORDER

IT IS ORDERED that:

1. The motions to dismiss filed by the defendant United States Department of State and defendant Josiah Keats (Dkts. #47, #53, #57, #61) are GRANTED.

---

[10] Despite this court's guidance, not only does Patel not assert sufficient factual allegations on the merits, he appears to have deliberately disregarded the court's specific instructions on how to obtain discovery of the identity of the alleged unknown special agent who accompanied Keats during the investigation. (*See* Dkt. # 46, *Order*, Sept. 26, 2012.)

2. To the extent that it is not moot, Plaintiff Arvind M. Patel's motion to strike submissions from defendant Keats (Dkt. # 59) is DENIED.

3. The complaint is DISMISSED with prejudice for his repeated failure to state a claim upon which relief may be granted.

Entered this 2nd day of August, 2013.

> BY THE COURT:
>
> /s/
>
> _____
> WILLIAM M. CONLEY
> District Judge